# BURLINGTON NISI PRIUS.

## AUGUST TERM, 1795.

[460]                    MERRITT v. PARKER.

1. One interested in a particular question, not admitted to give testimony with regard to it, though a good witness to other parts of the case.

2. A man has a right to use the water which flows through his land, but not to divert or stop it to the prejudice of others.

3. Where a stream is stopped or diverted, a jury would be right in giving almost any valuation to the water, in estimating the damages that have been sustained.

4. A, having erected a dam, under the authority of the legislature, which had never been complained of by any one, becomes possessed of all the water thus raised by his dam, and if B draws off any part of this water, he is answerable in damages.

5. A cannot legally increase the quantity of water which flows through the land of B, without his consent.

6. If A, by any banks or trenches, diverts more than the natural flow of water upon the land of B, B may remedy it by the erection of any dams or banks upon his own land.

This was an action on the case, brought to recover damages sustained by the plaintiff in consequence of obstructions raised in a water course. The cause was tried at the Burlington Nisi Prius, in August, 1795, before KINSEY, C. J., and SMITH, J.

The declaration stated that the plaintiff, on the 1st of October, 1793, was seized and possessed of a newly erected saw-mill, with its appurtenances, in the township of Northampton, situated on the soil and freehold of the plaintiff, adjoin-

Merritt v. Parker.

ing to a certain stream or rivulet, running and flowing to this sawmill, of which stream of water he was entitled to, and ought to have the use, for the purpose of turning his mill; that the defendant, on the 1st of October aforesaid, and at divers times between that day and the 1st of August, 1794, by means of dams, &c., stopped a great part of the water from running in this its accustomed course, so as to prevent the working of the sawmill, by which the plaintiff was deprived of the use of it, &c., &c.

To this declaration the defendant pleaded not guilty.

On the trial, it appeared by the evidence, in addition to vhat was stated in the declaration, that Merritt owned lands pon both sides of the north branch of the Rancocas creek, rhich is a public highway; that Parker also owned land beow Merritt, on the same stream, and had for many years a nill upon the stream, and under the authority of the legisature, had erected a dam across the creek, for the purpose of obtaining a head of water sufficient to turn his mill. It further appeared that Merritt, in the spring of the year 1793, cut a small trench from the creek, through his own land, by which he conducted a portion of the water into a small natural rivulet, which ran through his farm, and which, in conse-[461]-quence of this additional supply of water, was sufficient to turn the sawmill which he had erected. This rivulet emptied itself through a small neck of Parker's land, and fell into the main creek below Parker's mill.

One of the witnesses who was brought forward was one John Mullen, who, being sworn on his *voir dire*, declared he had no interest in the suit, and should not be affected however it might terminate. He stated, however, that he was the lessee of Parker's mill, but Parker was to indemnify him against any injury which he might sustain from Merritt's mill. The court declared he could not be permitted to give evidence upon the question whether there was sufficient water

to turn both mills, but allowed him to prove other matters which did not affect his interest or possession. (a)

*Griffith* and *R. Stockton*, for the plaintiff. Merritt had a right to make any use of the water which crossed his land, and to apply it as he thought proper, provided no injury resulted to any other person, and provided his employment of it was not inconsistent with the law, or injurious to the property of his neighbor. In this case it appeared clearly from the testimony that, by taking the water out of the creek, no injury accrued to Parker's mill, because there was sufficient water for the supply of both ; and, secondly, that in adding water to the rivulet no damage was occasioned, because the only part of the land through which this stream ran was of no value, and was not applied to any use. If, therefore, the plaintiff, in applying this water so as to subserve his own interests and views, did not occasion any detriment to the defendant, he was perfectly justified by the law in so employing it; and if Parker actually received no damage, any attempt to throw the water back upon Merritt's land, so as to stop his mill, was an outrage of a most unjustifiable nature, occasioned by his hatred to his neighbor, and clearly punishable by the law.

[462] *Read* and *Woodruff*, for defendant. If Parker was authorized to erect the dam across the Rancocas, of which there could be no doubt, under the act of the legislature, this gave him a property in the water thus raised, and no one had a right, under the pretence that there was a superabundance of water, to draw off a portion of it for his own use. Upon the other part of the case, the law is equally with the defendant, and the reason of the thing perfectly manifest. What-

(a) It is presumed that the rule of evidence adopted by the court is now altogether exploded, and that if a witness is not interested in the event of the suit, he is competent; the interest in the question goes only to his credit. See *Bent* v. *Baker*, 3 *T. R.* 27, particularly the opinion of Mr. Justice Grose. *Fairchild* v. *Beach*, 1 *Day* 266; *Phelps* v. *Winchel*, *Ib.* 269.

Merritt v. Parker.

ever might be the value of this land to Parker, it is not a matter upon which the plaintiff has any right to determine. The law prohibits any violation of the property of another, any infringement of his rights; and it does not permit the person who has committed outrages to shelter himself under the plea that the person whose rights he has invaded has sustained no injury.

If this act of Merritt's was tortious, if he occasioned a larger quantity of water than usual to flow over the land of Parker, the latter was perfectly justifiable in providing against the consequences of this act by the erection of banks or dams, even though they should occasion a re-flow of the water upon Merritt's land.

KINSEY, C. J., delivered the following charge to the jury, which was fully concurred in by SMITH, J.:

The action which you have been impaneled to try is an action on the case, in which the plaintiff declares that, on the 1st of October, 1793, he was possessed of a newly erected saw-mill, on his own soil and freehold, and adjoining to a certain stream running and flowing through the same, of which rivulet he ought to have the free and uninterrupted use, for the purpose of turning his mill; that the defendant, on the said first of October, and at divers times between that day and the 1st of August, 1794, stopped a great part of the water of this stream, so as to clog the mill and prevent its being made use of. For the injury thus sustained the present suit is brought, and he demands damages proportionate to its amount.

This is a summary of the plaintiff's case, as stated in the declaration. To this declaration the defendant has pleaded not guilty, so that the question for your determination is, whether the defendant has done any injury to the plaintiff which will [463] support this action, and if he has, what compensation in damages the plaintiff ought to recover.

The determination of the first question seems to involve some important principles of law, as well as facts. Upon a

2 L

Merritt v. Parker.

subject which appears to be attended with no small difficulty, it is not easy to lay down, upon a sudden, principles not open to some kind of objection, and which will tend to guard and preserve the just rights of all.

In general, it may be observed, when a man purchases a piece of land, through which a natural water-course flows, he has a right to make use of it in its natural state, but not to stop or divert it to the prejudice of another. *Aqua currit, et debet currere*, is the language of the law. The water flows in its natural channel, and ought always to be permitted to run there, so that all, through whose land it pursues its natural course, may continue to enjoy the privilege of using it for their own purposes. It cannot legally be diverted from its course without the consent of all who have an interest in it. If it should be turned into another channel, or stopped, and this illegal step should be persisted in, I should think a jury right in giving almost any valuation which the party thus injured should think proper to affix to it. This principle lies at the bottom of all the cases which I have met with, and it is so perfectly reasonable in itself, and at the same time so firmly settled as a doctrine of the law, that it should never be abandoned or departed from.

The facts which have appeared from the evidence, so far as it is necessary to state them, in order to render those remarks which it is thought proper to make intelligible, are as follows:

It appears that Parker, the defendant, previous to the erectiod of Merritt's mill, or the digging of the trench which has led to this suit, had erected a dam on a branch of the Rancocas, in order to raise a head of water sufficient to turn a saw-mill which he had before built; and that he had for several years been in possession of this dam, saw-mill, and the water raised by the dam, as far as the nature of the thing admits of possession, without any appearance of dissatisfaction or complaint.

[464] It appears that, in the year 1792, Merritt had a design to build another saw-mill, and to avail himself of the

dam already erected by Parker and the water raised by it. In order to effect this, he cut a trench through his own land, from the water in the dam, so as to convey a part of it into a small rivulet, also in his own land, for the purpose of turning the mill, which he either had then erected or intended to erect. This rivulet, or small stream, it is further to be observed, passed through a part of Parker's land before it disembogued itself.

These facts have not been disputed by either party. On examining the acts of assembly it appears that, in May, 1793, Parker obtained an act of the legislature confirming the dam which he had built upon the Rancocas; but, by the terms of this law, he is not to do any injury to the public or to individuals, and for every injury which may be occasioned by this dam, he is answerable in damages.

From this statement of the circumstances, I am satisfied that Parker was possessed of the mill-dam, and of the water retained by that dam, as early as the year 1780; at any rate, long before the erection of the plaintiff's mill, and before the cutting of the trench for the purpose of drawing the water out of the dam. The questions arising from these facts, and upon which you are to determine, are—had the plaintiff a right to cut the canal in question, and draw the water out of the defendant's pond? if he had, had he a right to force more water over the defendant's land than would naturally run over it? and whether the defendant had not a right to resist him in a step of this kind, by the erections of any works whatever, upon his own land, calculated to effect this object. These questions are minutely connected with each other, and upon the determination which you shall give to them, or some of them, the present action depends.

For my own part, I confess that, if what some, if not all, plaintiff's witnesses have sworn be true, that there is water sufficient for both mills, and that the defendant sustained but little if any injury by the passage of the water through his land, I should have been happy if a compromise could have been made, and this suit prevented by a friendly arrangement.

Merritt v. Parker.

[465] Wishes of this kind, however, are useless now, because neither the court nor the jury can prescribe the terms of a compromise, and it should not be permitted to operate upon our minds. We are called upon to carry the law into execution, and further than this we have no concern in the disputes between the parties. It becomes necessary, therefore, to state to you the law which is applicable to the occasion.

Upon the best consideration which it has been in our power to bestow upon the subject since the commencement of the trial, we are of opinion that the plaintiff had no right to cut the trench or canal, and thus to draw out the water, which the defendant by the erection of the dam had appropriated to his own use, and had acquired a property in, sometime before.

Should this, however, be doubtful, and admitting the plaintiff had a right to use the water, and to cut the trench in order to enable him to use it, still we think, that he could not exercise his right in such a manner as to cause the flow of an additional quantity of water over the defendant's land without his consent.

Further, we think, that if one man by any contrivance causes to flow over the land of another a greater quantity of water than it is naturally subjected to, against his will, or without his consent, such other has a legal right to resort to any device, or may erect any banks, dams, &c., on his own land, to prevent this additional current of water; and if any consequences injurious to the first wrong-doer result from this course, he must submit to them, and cannot recover compensation in damages. In the present case it is impossible that Parker could discriminate between the water that was drawn from the creek, and that which belonged naturally to the rivulet; neither could he prevent the one from flowing into his land without keeping out the other also.

It is unreasonable, and the doctrine cannot be countenanced, that when one has erected a dam, and at a considerable expense has appropriated water to his own use, another person by cutting a canal shall be permitted to diminish his supply, and avail himself of the labor and work of the original owner,

without defraying any portion of the expense that had been incurred, or undertaking to assist in keeping these works in [466] repair. It would be equally unreasonable that one man should have a right to turn more water over the land of his neighbor than would naturally go in that direction ; and so far as regards the right, it is altogether immaterial whether it may be productive of benefit or injury. No one has a right to compel another to have his property improved in a particular manner ; it is as illegal to force him to receive a benefit as to submit to an injury.

In the light, therefore, in which we view this subject, whether the drawing of the water from the pond by means of the trench, or the causing an additional quantity of water to flow through the lands of the defendant, was productive of benefit or injury, are, in my opinion, questions into which we have no right to examine. It is sufficient that the plaintiff pursued a course not warranted by the law ; and the defendant has only adopted measures to prevent the consequences of this first act from affecting his own property, and our opinion is, that he was authorized by the law to do what he has done.

Verdict for defendant.

NOTE—See *Palmer et al.* v. *Mulligan, et al.*, 3 *Caines Rep.* 307, and *Suckrider et al.* v. *Beers et al.*, 10 *Johns.* 241; *Bealey* v. *Shaw*, 6 *East* 208; *Brissel* v. *Sholl*, 4 *Dall.* 211.

CITED *in Campbell* v. *Smith*, 3 *Hal.* 139.